UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

United States of America,
      **Plaintiff,**

    v.

Chanel Lorena Trim,
      **Defendant.**

Case No. 7:20-CR-00040(1) DC

### Government's Response to Defendant's Sentence-Reduction Motion

Defendant Chanel Lorena Trim is serving a prison term based on her conviction for one count of possession with intent to distribute a controlled substance – (cocaine base "crack"). She has moved under 18 U.S.C. § 3582(c)(1)(A) for a reduction in her prison term.

For two independent reasons, this Court should deny Defendant's motion. First, Defendant has failed to show extraordinary and compelling reasons that would warrant a reduction. Second, Defendant has failed to show that the statutory sentencing factors outlined in 18 U.S.C. § 3553(a) would support a reduced prison term. This Court should also deny any alternative request for an order directing BOP to designate her to serve her sentence in home confinement.

### Background

**A.    Defendant's Offense, Criminal History, and PSR Sentence**

In 2020, Defendant was convicted of possession with intent to distribute cocaine base "crack" in violation of 21 USC 841 (a)(1), (b)(1)(C). (Judgement, ECF No. 37; PSR, ECF No. 32 ¶ 2). Police conducted a traffic stop on a vehicle with three occupants in which Defendant occupied the right rear passenger seat. A probable cause search of the vehicle was conducted by police at the scene of the stop. Officers recovered a purple cloth bag located in the pouch on the back of the front seat, facing back toward and directly accessible to Defendant. The bag contained individual plastic baggies later determined to be cocaine and a total weight of 16.8 grams of crack cocaine was recovered. Also found in Defendant's purse was $4,128.00 and a baggie of marijuana.

In a post-*Miranda* statement Defendant claimed ownership of the contraband. Defendant pled guilty to possession with intent to distribute cocaine base "crack". (PSR ¶ 2).

Defendant is a career criminal based on a history of 12 adjudicated cases consisting of both misdemeanor and felony offenses where Defendant was represented by counsel. (PSR ¶¶ 29-41). Defendant's criminal history consists of four convictions for delivery of controlled substances (cocaine), with three cases receiving a sentence of incarceration for a year or more. (PSR ¶¶ 34, 35, 38, 40). Defendant's misdemeanor offenses include simple drug possession, theft, identity theft, and prostitution. (PSR ¶¶ 31, 32, 37, 39, 41). Defendant had two terms of probation revoked on a misdemeanor driving while intoxicated (PSR ¶ 32) and the probation revoked on the assault conviction. (PSR ¶ 33).

Based on Defendant's conduct and criminal history, the guideline range was 151 to 188 months. (PSR ¶ 69).  After considering the sentencing factors in 18 U.S.C. § 3553(a), this Court imposed a prison term at the guideline's low end of 151 months. (Judgment, ECF No. 37).

### B.    Defendant's Current Term of Imprisonment

Defendant is scheduled for release on September 11, 2029, with First-Step Act credits of 365 days included. *See* Fed. Bureau of Prisons - Find an inmate, *https://www.bop.gov/inmateloc/* (last visited March 16, 2026) (click on "Find by Number" and enter "45142-480"). Defendant is housed in the stand-alone, all female general population, Federal Prison Camp, at Bryan, Texas. Defendant has served approximately fifty-five percent of the statutory term imposed. *See id.* Upon release, Defendant will serve a 3-year term of supervised release. (ECF No. 37).

### C.    Defendant's Previous Motions

Defendant has filed three motions pertaining to the sentence imposed by this Court. First, in 2021, a Motion to Vacate Sentence was filed seeking relief based on four grounds. Ground one alleged ineffective assistance of counsel for failure to explain an open plea, failure to explain the 14-day appeal period, and failure to disclose appellate rights. Ground two contested the criminal

**U.S. Response to Sentence-Reduction Motion**                                                    **2**

history calculation based on Washington State charges being vacated and thus excludable for inclusion in sentencing considerations. Ground three specified failure of counsel to represent Defendant to the "full extent of responsibility" resulting in career offender designation. Finally, ground four contested career offender sentence based on a "stacked charge" related to a Washington State 3-count sentence. (ECF No. 41). This Court denied relief on all claims. (ECF No. 50, p. 16).

Second, Defendant filed a motion, in 2022, for a Certificate of Appealability, which the Fifth Circuit Court of Appeals denied. (ECF No. 56).

Third, in 2024, Defendant filed an 18 U.S.C. § 3582(c)(2) motion to reduce her sentence. This Court denied the motion based on Defendant's ineligible status for reduction under Parts A (Criminal History Points), and B (Zero Point offender), Subpart 1 of Amendment 82. (ECF No. 58).

### D.    Administrative Requests and Consideration

On November 25, 2025, Defendant submitted an administrative request for a reduction in sentence to Dr. Tanisha Hall, Warden at the Federal Prison Camp in Bryan, Texas. On December 2, 2025, Warden Hall denied Defendant's request for a reduction in sentence recommendation and for a motion from the Bureau of Prisons (BOP) to the Court, based on Defendant not meeting the proscribed eligibility requirements as contained in Bureau of Prisons Program Statement 5050.50. (ECF No. 60, Ex. A).

### E.    Defendant's Current Motion

On March 5, 2026, Defendant filed the instant motion with this Court seeking a sentence reduction under § 3582(c)(1)(A). (ECF No. 60). Defendant claims her primary grounds for a reduction: non-terminal medical issues, staff misconduct during facility transfers, alleged harsh prison conditions, and her exemplary rehabilitation, support an immediate reduction to time served or in the alternative a "graduated release" to home confinement as a special condition of supervised release. (ECF 60 ¶VI(B)).

**U.S. Response to Sentence-Reduction Motion**                                                    **3**

**Argument**

A district court "generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon v. United States*, 560 U.S. 817, 819 (2010) (quoting 18 U.S.C. § 3582(c)). A motion for compassionate release invokes one of the "few" and "limited" exceptions to this general rule. *Ward v. United States*, 11 F.4th 354, 359, 361 (5th Cir. 2021).

Under this exception, a defendant who has exhausted administrative remedies is eligible for a sentence reduction if a district court finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* at 359-60 (quoting § 3582(c)(1)(A)). If a district court finds those requirements satisfied, then the court "may" reduce the defendant's sentence "after considering the factors set forth in [18 U.S.C.] § 3553(a) to the extent they are applicable." *Id.* at 360 (quoting § 3582(c)(1)(A)). But a court's resolution of a compassionate-release motion is "inherently discretionary." *Id.* "[T]he burden falls on the defendant to convince the district judge to exercise discretion to grant the motion . . . after considering the Section 3553(a) factors." *Id.* at 361 (cleaned up).

I.      **This Court should deny Defendant's motion for failure to show exhaustion of administrative remedies.**

Defendant's motion is premature because she has not satisfied the statutory exhaustion requirement. Section 3582(c)(1)(A) specifies "in clear language" what a defendant must do before filing a motion under that provision. *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020). The sentence-reduction motion must come "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). Compliance with this requirement is "mandatory." *Franco*, 973 F.3d at 468-69. When, as in this case, the government has properly raised the rule, a court must enforce it. *Id.*; *accord United States v. Springer*, 820 F App'x 788, 791-92 (10th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 833-36 (6th Cir. 2020); *United States v. Raia*, 954 F.3d 594, 597 (3d

Cir. 2020). If a defendant has failed to exhaust, a district court should deny the sentence-reduction motion without prejudice to refiling after exhaustion of administrative remedies. *See Franco*, 973 F.3d at 468.

### A. Defendant has submitted an administrative request based on an argument different from those in this motion to the Court.

Only four of the six claims on which Defendant bases her motion were exhausted in the Companionate Release Request submitted to the BOP and are addressed herein. (ECF No. 60, Ex. A). One of Defendant's claims relies on Sentencing Commission guideline changes which are subject to this Court's previous denial. (ECF No. 58). Finally, Defendant failed to comply with the statutory exhaustion requirement which bars consideration of her argument for sentence reduction based on alleged staff sexual misconduct at the Oklahoma Transfer Facility that reportedly occurred, on May 22, 2024. (ECF No. 60 §I ¶2). Defendant received a memorandum from the BOP on October 6, 2025, serving as notice of the outcome of an investigation of the FTC Oklahoma incident, wherein the allegation was found "Not Sustained." (ECF No. 60, Ex. I). The investigation outcome notice is subject to the Administrative Remedy process (*see* BOP Program Statement 1330.18 §§ 9 & 16). ([https://www.bop.gov/poicy/progstat/1330_018.pdf](https://www.bop.gov/poicy/progstat/1330_018.pdf)). No BOP records indicate Defendant followed through with the BOP Administrative Remedy procedures in contesting or questioning the investigative conclusion.

Although Defendant submitted an administrative request to the BOP seeking a compassionate release, that request did not include as grounds for a sentence reduction the allegation from FTC Oklahoma as asserted in Defendant's motion to the Court. (ECF No. 60, ¶ V(A)(2); & Exs. A, H, & I). To exhaust administrative remedies an inmate must identify for the warden the specific grounds claimed by an inmate to warrant a reduction. *See United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021) (unpublished).

An inmate "is required to present the same or similar ground for compassionate release in a request to the Bureau as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *Springer*, 820 F. App'x at 789-90, 792.

Any contrary approach would undermine the purpose of exhaustion, because the Bureau of Prisons (BOP) "cannot determine whether it should bring a compassionate-release motion if an inmate does not explain in [her] request the ground justifying [her] release." *Williams*, 987 F.3d at 703.

Defendant may not present a claim for a sentence reduction to this Court based on staff sexual misconduct alleged to have occurred on May 22, 2024, at the Oklahoma City Federal Transfer Center, until she has exhausted the administrative remedy process first with the BOP.

**II.    Defendant has not shown extraordinary and compelling reasons for a sentence reduction consistent with the applicable Sentencing Commission policy statement.**

A court can grant a sentence reduction under § 3582(c)(1)(A) only if "extraordinary and compelling reasons" justify the reduction. The Fifth Circuit has explained that "extraordinary" means "beyond or out of the common order," "remarkable," and "singular." *United States v. Austin*, 125 F.4th 688, 691 (5th Cir. 2025) (cleaned up); *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) (cleaned up). "Compelling," in turn, "means to drive or urge with force, or irresistibly, to force, and to subjugate." *Austin*, 125 F.4th at 692 (cleaned up); *Escajeda*, 58 F.4th at 186 (cleaned up). Thus, defendants can seek a sentence reduction for "extraordinary and compelling reasons" under § 3582(c)(1) "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Austin*, 125 F.4th at 692; *Escajeda*, 58 F.4th at 186.

In addition to meeting this statutory standard, a defendant must show that the reasons offered for a sentence reduction are "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). That policy statement appears in section 1B1.13 of the Sentencing Guidelines. The Fifth Circuit held that a previous version of this policy statement that applied "[u]pon motion of the Director of the Bureau of Prisons" did not bind a district court addressing a motion by a prisoner. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). But the updated policy statement effective November 1, 2023, applies "[u]pon motion of . . . the defendant" as well. USSG § 1B1.13(a). So, any sentence reduction must now be consistent with

that policy statement. *See Dillon*, 560 U.S. at 827 (treating similar phrase in § 3582(c)(2) as mandatory).

Here, Defendant unsuccessfully carried her burden by failing to present any credible evidence supporting reasons for a sentence reduction that are "extraordinary and compelling" and "consistent with [the] applicable policy statement []." § 3583(c)(1)(A).  Defendant offers an attachment to the instant motion and cites a Consent Decree issued out of the Northern District of California, Case No. 4:23-cv-04155-YGR. (ECF 60, Ex. L). Defendant's status as a member of the class which, "refers to all people who were *incarcerated at* FCI Dublin between March 15, 2024, and May 1, 2024, and all named Plaintiffs." (*Id.* at ¶11) (emphasis added).

Defendant's status as a class member–simply being incarcerated at the facility during the applicable time frame–provides no support for indirect or vague assertions by Defendant as having "extraordinary or compelling" reasons based on being a victim of sexual misconduct by a staff member at FCI Dublin. No records show Defendant is a named plaintiff in the above cited civil lawsuit, nor has she interviewed as a victim/witness in the ongoing criminal investigation/prosecution of BOP staff members identified in the misconduct.

### A.    Defendant's medical circumstances are not extraordinary and compelling reasons for a sentence reduction.

Section 1B1.13(b)(1) of the policy statement lists "[m]edical [c]ircumstances" that count as extraordinary and compelling reasons for a sentence reduction, but Defendant has not shown any of these circumstances. The BOP's Medical Classification system assigns a care level to each BOP institution, with a medical and mental health care level also assigned to each individual inmate. The system has four care levels assigned based on the physical plant, community-based resources, local labor market, and impact on other correctional programs. An increase in staffing levels will occur at institutions that have higher care level assignments. *See* BOP Program Statement 6031.05 §3 at https://www.bop.gov/policy/progstat/6031.05.pdf (Last accessed March 25, 2026).

### 1.    Defendant has not shown a terminal illness.

A defendant may show extraordinary and compelling reasons by showing that she "is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)" such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." USSG § 1B1.13(b)(1)(A). Defendant has not shown any such illness where Defendant is classified at Medical Care Level 2 (ECF No. 60, Ex. D at pg.3).

BOP Program Statement 6031.05 §3 states, "[I]nstitutions house inmates that have stable chronic conditions managed by Health Services [Department] employees and supplemented by existing community resources. Care Level 2 inmates generally self-manage their conditions and need infrequent visits to medical specialists or community facilities." *Id*. https://www.bop.gov/policy/progstat/6031.05.pdf. (Last accessed March 28, 2026). Defendant's current medical care level was confirmed by BOP administrative records.

### 2.    Defendant has not shown a condition or impairment that substantially diminishes her ability to provide self-care in a correctional environment.

A defendant may show extraordinary and compelling reasons by showing that her ability to provide "self-care" in a correctional environment is "substantially diminish[ed]" because of "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process" from which she is "not expected to recover." USSG § 1B1.13(b)(1)(B). As referenced above in subsection A-1, Defendant has not made such a showing. Defendant is classified at Mental Health Care Level 1 indicating Defendant requires the lowest level of staff treatment or intervention. (*See* ECF No. 60 Ex. D, pg.3).

### 3.   Defendant has not shown extraordinary and compelling reasons based on alleged sexual or physical abuse.

Section 1B1.13(b)(4) of the Sentencing Commission's policy statement recognizes that possibility of extraordinary and compelling reasons for a reduction when "[t]he defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of . . . sexual abuse . . . or physical abuse resulting in 'serious bodily injury' . . . that was committed by, or at the

direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant." [1]

But "[f]or purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed, or the defendant is in imminent danger." *Id.*

Defendant has not met the requirements of this section of the policy statement. The allegations made by Defendant of sexual misconduct by an FTC Oklahoma staff member were investigated by BOP administration under the guidelines of and in accordance with standard operating procedure outlined in BOP Program Statement 5324.12 – Sexually Abusive Behavior Prevention and Intervention Program, which incorporates the Prison Rape Elimination Act (PREA). *Id.* (*See* https://www.bop.gov/policy/progstat/5324_012_cn-1.pdf)(Last accessed March 20, 2026). Defendant errantly argues the fact an investigation was conducted under PREA guidelines implies the BOP affirmed the incident as "sexual misconduct/sexual abuse;"

Defendant also argues support for sentence reduction considering the circumstances of the reported incident can be found in the U.S. Sentencing Guidelines. Specifically, though U.S.S.G. §1B1.13(b)(4). However, statutory definitions for "victim of abuse" as an extraordinary and compelling reason for a reduction in a term of imprisonment, subsections (b)(4)(A) and (B), exclude the nature of Defendant's allegations. *Id.* The misconduct at FTC Oklahoma claimed by Defendant involved no physical contact of any kind (sexual or otherwise) by the accused with the Defendant. The alleged incident did not meet the statutory or guideline definitions of "sexual act" or "serious

---

[1] The "sexual abuse" must "involv[e] a 'sexual act' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim." USSG § 1B1.13(b)(4)(A).

**U.S. Response to Sentence-Reduction Motion**                                          **9**

bodily injury."[2] *Id.* This issue is excluded from review under Defendant's instant motion since she failed to exhaust remedies and by first raising the issue for BOP determination in her Administrative Request to Warden Hall.  (*See* ECF No. 60 §V(A)(2) & Ex. A).

Likewise, as previously addressed in the Argument, § II of this response, Defendant has presented no evidence to the Court to support any allegations of "abuse" individually experienced by Defendant while incarcerated at FCI Dublin.

### B.  Defendant has not shown other extraordinary and compelling reasons for a sentence reduction.

Although a court may also consider "any other circumstance or combination of circumstances" that are "similar in gravity to" the medical, age, family, and abuse-based circumstances described in the policy statement, USSG § 1B1.13(b)(5), Defendant has presented no credible evidence and failed to show any such reason.

### 1.  Reasons not sufficiently serious

The reasons Defendant offers—Fatty liver disease, PTSD (pre-dating incarceration), and unsubstantiated allegations of staff misconduct–are not "similar in gravity" to the serious medical, age-related, family, abuse-related reasons for relief that the policy statement envisions. Recall that an "extraordinary and compelling reason" under § 3582(c)(1) is an "extraordinarily severe exigency." *Escajeda*, 58 F.4th at 186.

Contrary to Defendant's arguments, the Bureau of Prisons medical care level 2 assignment is not commensurate with the level of medical treatment necessary for a serious condition or an end-of-life-trajectory medical prognosis which would require placement of an inmate in a level 4

---

[2] A "serious bodily injury" means "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG §§ 1B1.1 cmt. n. 1(M), 1B1.13(b)(4)(B). "Serious bodily injury" is also "deemed to have occurred" if the abuse "involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law." USSG §§ 1B1.1 cmt. n. 1(M), 1B1.13(b)(4)(B).

Federal Medical Facility like Carswell, Texas. (*See* BOP Program Statement 6031.05 §3 https://www.bop.gov/policy/progstat/6031.05.pdf.) (Last accessed April 1, 2026).

### 2. Defendant is relying on rehabilitation

Defendant argues that her rehabilitation while in custody is an "extraordinary and compelling" reason for relief. But Congress has made clear that rehabilitation alone cannot be an "extraordinary and compelling" reason for relief. 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.") So, Defendant's purported rehabilitation is not—standing alone—a sufficient basis for relief. And although the Sentencing Commission has stated that rehabilitation can be considered along with other factors, *see* USSG § 1B1.13(d), the circumstances here, even considered as a whole, are not "extraordinary and compelling." Defendant's compliance with the disciplinary rules while incarcerated is expected and thereby not extraordinary. Defendant participated in educational programs made available to the inmate population as a means to facilitate or ease re-integration as a member of an orderly society, also a non-extraordinary circumstance. Defendant engaged in work programming when assigned to the BOP's UNICOR prison industries operation, receiving the benefit of job skills training while learning responsible work habits, in line with the designed program goals and not compelling beyond ordinary societal expectations. (ECF No. 60 § I).

In keeping with this Court's recommendations to the BOP for program and job training, (ECF No. 37, p. 2), Defendant's program compliance and attainment of certain goals may be admirable; however, basic compliance with this Court's instructions and meeting BOP's basic expectations for inmate conduct does not meet the threshold of either extraordinary or compelling reasons to grant Defendant's motion.

### C.  Defendant has not shown extraordinary and compelling reasons based on the length of her sentence.

The Sentencing Commission purported to authorize courts to consider "a change in law (other than an amendment to the Guidelines Manual that has not been made retroactive)" if "a defendant received an unusually long sentence and has served at least 10 years of the term of

imprisonment" and "such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." USSG § 1B1.13(b)(6). This Court should not reduce Defendant's sentence based on this portion of the policy statement.[3]

### 1. By its own terms, the policy statement on "change in law" does not apply to Defendant.

Because Defendant does not meet the criteria in the policy statement, she could not show an extraordinary and compelling reason based on a change in law even if the Sentencing Commission acted within its statutory authority when promulgating that provision.

### A. Defendant has not served 10 years of imprisonment.

The policy statement on "changes in law" applies to defendants who "ha[ve] served at least 10 years of the term of imprisonment." USSG § 1B1.13(b)(6). This Court sentenced Defendant to 151 months (12 years, 7 months) incarceration on July 9, 2020, and has served only 6 years and not yet served 10 years of the term imposed. Defendant's assertion of any disparity with sentences imposed after the commission's updated policy statement relies solely on Defendant's assertion that she qualifies for mitigating role designation under the guidelines. Defendant's criminal history category includes points assessed for two prior felony convictions for distribution of controlled substances where the offenses consisted of Defendant selling narcotics to other individuals.

Here, Defendant pled guilty, not to mere knowledge of the presence, but to actual possession of a distribution quantity of multiple controlled substances.  So, Defendant's assertion of minimal participant fails, and she cannot therefore rely on subsection (b)(6) to establish extraordinary and compelling reasons for a sentence reduction.

---

[3] A divided panel of the Fifth Circuit held, in addressing a compassionate-release motion filed and decided before the current policy statement, that a district court may treat as "extraordinary and compelling" a combination of "extraordinary rehabilitation" and the decade-shorter sentence a defendant would have received if sentenced at the time of his motion. *United States v. Jean*, 108 F.4th 275, 281 (5th Cir. 2024). But *Jean* "was wrongly decided" because it conflicts with prior Fifth Circuit precedent. *Austin*, 125 F.4th at 692-93.

### B. Defendant is relying on guidelines amendments.

Defendant seeks a sentence reduction based on an amendment to the Sentencing Guidelines. But the policy statement expressly precludes reliance on "an amendment to the Guidelines Manual that has not been made retroactive" in establishing extraordinary and compelling reasons for a sentence reduction. USSG § 1B1.13(b)(6), (c). Instead, 18 U.S.C. § 3582(c)(2) and the policy statement applicable to retroactive guidelines amendments, USSG § 1B1.10, provide the exclusive avenue for a defendant to seek a sentence reduction under a retroactive guidelines amendment. *See* 18 U.S.C. § 3582(c)(2).

### 2. The Sentencing Commission exceeded its authority in promulgating section 1B1.13(b)(6) of the policy statement.

Defendants cannot rely on the part of the policy statement purporting to recognize changes in law as extraordinary and compelling reasons because the Sentencing Commission exceeded its authority in promulgating that part of the policy statement. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). "Just like any agency action, the Guidelines must 'bow to the specific directives of Congress.'" *Austin*, 125 F.4th at 692 (quoting *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997)). An agency cannot adopt an impermissible reading of the statute, such as a reading that defies the plain statutory text, *see id.*, or exceeds the gap left by Congress, *see Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 53-58 (2011); *Batterton*, 432 U.S. at 428.

The Commission's attempt to allow sentence reductions based on intervening changes in sentencing law is inconsistent with statute and therefore invalid. *See Austin*, 125 F.4th at 692. Section 3582 establishes a keystone of federal sentencing law: "A federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Although § 3582(c)(1)(A) allows an exception to that overarching principle,

Congress clarified that this exception depends on a defendant showing a reason that is "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase, particularly considering the statute's structure and purpose, encompasses non-retroactive or intervening changes in law.

First, the Commission's policy statement clashes with the statute's plain text. As the Fifth Circuit has explained, "extraordinary" means "beyond or out of the common order," "remarkable," and "singular." *Austin*, 125 F.4th at 691 (cleaned up); *Escajeda*, 58 F.4th at 186 (cleaned up). "Compelling," in turn, "means to drive or urge with force, or irresistibly, to force, and to subjugate." *Austin*, 125 F.4th at 692 (cleaned up); *Escajeda*, 58 F.4th at 186 (cleaned up). Thus, defendants can seek a sentence reduction for "extraordinary and compelling reasons" under § 3582(c)(1) "only when they face some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner." *Austin*, 125 F.4th at 692; *Escajeda*, 58 F.4th at 186. Defendant is relying on a non-retroactive statutory change, like the First Step Act's changes to § 924(c) and § 841. Defendant relies on a nonretroactive statutory change:  But "a non-retroactive change in the law is not an extraordinary and compelling reason to reduce a prisoner's sentence." *Austin*, 125 F.4th at 692. "A non-retroactive change in the law affects every prisoner previously sentenced under that provision in the exact same way" and "has zero effect on defendants already in prison." *Id.* So, "a non-retroactive change in law is, by definition, neither an 'extraordinarily severe exigency' nor 'unique to the life of the prisoner.'" *Id.* (quoting *Escajeda*, 58 F.4th at 186). As the Fifth Circuit has explained, the Commission's contrary interpretation of the statute in § 1B1.13(b)(6) is invalid. *See id.* "[T]he Sentencing Commission cannot make retroactive what Congress made non-retroactive." *Id.* "And it certainly cannot do so through an interpretation of 'extraordinary and compelling' that conflicts with the plain meaning of those terms." *Id.*

Second, statutory context confirms that the phrase "extraordinary and compelling" does not encompass intervening changes in law. In the very next paragraph of § 3582(c), Congress expressly addressed the retroactive application of some changes in law by authorizing courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that

**U.S. Response to Sentence-Reduction Motion**                                    **14**

has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had § 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *United States v. McCall*, 56 F.4th 1048, 1056 (5th Cir. 2022). That Congress did not similarly provide the Commission or district courts with authority to revisit sentences after statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes. Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because Congress has already designed procedures to address when and how federal prisoners may collaterally attack their sentences. *See Escajeda*, 58 F.4th at 186-88.

Third, the Commission's attempt to recognize intervening changes in law as extraordinary and compelling reasons for sentence reductions would undermine a primary purpose of the Sentencing Reform Act in which compassionate release originated. Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)). "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325. Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress expected that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances"

**U.S. Response to Sentence-Reduction Motion**                                                      **15**

that would justify reducing a sentence. *Id.* at 55-56, 121. The Commission, however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That view is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent for § 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38.

Fourth, the Commission's attempt to recognize intervening changes in law as extraordinary and compelling reasons for sentence reductions is in serious tension with separation of powers. *See Austin*, 125 F.4th at 692. In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "[non-adjudicatory] functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations case-by-case.

### 3.  Defendant failed to establish that changes in law produce a grossly disproportionate sentence.

Here, Defendant is unable to claim disparate length of sentence. She would not necessarily receive a shorter sentence under current law. Calculations under the present sentencing guidelines, using the same points assessment as when Defendant was originally sentenced (ECF No. 37; PSR ¶¶ 26, 44) places Defendant's current 151-month sentence between the minimum and maximum current calculated guideline range. If sentenced today, the current term imposed is only marginally

above the calculated guideline minimum of 130 months and below the maximum 162 months. (*See* https://www.sentencing.us/) (Last accessed March 26. 2026).

According to the 2025 U.S. Sentencing Commission report, the average guideline minimum for offenders in federal prison was 173 months and the average length of imprisonment imposed was 145 months. Approximately one-half of the 134,766 incarcerated individuals are convicted of drug trafficking crimes. The standard of "unusually long" or "gross disparity" is not applicable to Defendant's current sentence." (*See* United States Sentencing Commission – Research: Individuals in the Federal Bureau of Prisons) https://www.ussc.gov/research/quick-facts/individuals-federal-bureau-prisons (Last accessed on March 20, 2026).

### III.    Defendant failed to show she is not a danger to the safety of any other person or the community.

The policy statement on sentence-reduction motions directs courts to consider whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Section 3142(g) directs a court to consider factors such as the nature and circumstances of the defendant's offense and the defendant's history and characteristics. 18 U.S.C. § 3142(g).

Defendant has made no showing of no danger to society if her sentence is reduced. Defendant has demonstrated propensity for violence having a previous conviction for assault, in which probation was revoked, (PSR ¶ 32). Defendant's career criminal history consists of conduct endangering the community including Driving Under the Influence for which the probation was twice revoked. (PSR ¶ 33).

### IV.    Defendant has not shown the sentencing factors in 18 U.S.C. § 3553(a) support a reduced prison term.

To justify a sentence reduction, a defendant "must persuade the district court that . . . early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a)." *United States v.*

*Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see* 18 U.S.C. § 3582(c)(1)(A). At Defendant's sentencing, this Court determined the sentencing factors supported a term of 151 months. (ECF No. 37). Defendant argues in her instant motion for re-calculation based on sentencing commission guidelines assignment as a minimal participant or "lookout." (*See* ECF No. 60 §I). The criminal history factors calculated by the U.S. Probation Office pertaining to participant level and adopted by this Court continue to support the 151-month sentence imposed rather than the 75-month (time-served) sentence Defendant seeks.

- **Nature and circumstances of offense, § 3553(a)(1), and seriousness of offense, § 3553(a)(2)(A).**

The nature, circumstances, and seriousness of Defendant's offense remain unchanged and reinforce the just nature of this Court's decision. Pursuant to an authorized traffic stop and development of probable cause, Police searched the vehicle in which Defendant was reportedly one of three occupants as a passenger having been picked up and getting a "ride." Officers located a purple bag with 16.8 grams of crack cocaine, 9.9 grams of cocaine, 1.0 gram of methamphetamine, and 23.6 grams of marijuana. Also found in Defendant's purse was $4,128.00 and a baggie of marijuana. The other female passenger identified, post-*Miranda*, the contraband as belonging to Defendant. The Defendant likewise provided a post-*Miranda* statement acknowledging ownership of the bag and contents. (PSR ¶¶ 3, 4, 6, & 7). Defendant is accountable for at least 373.03 kilograms of the converted combined drug weight of "crack", methamphetamine, cocaine, and marijuana. (PSR ¶¶ 8-10).

Defendant's motion which asserts culpability as merely a "minimal" participation level of "lookout," is inconsistent with the facts. (See ECF No. 60 § V, B(1)).

- **Defendant's history and characteristics, § 3553(a)(1).**

Defendant is a career criminal having a sustained history of offenses involving possession or delivery of controlled substances. Defendant's conviction record also includes the crimes of theft, identity theft, and prostitution. (ECF No. 32 ¶¶ 29-44).

**U.S. Response to Sentence-Reduction Motion**                                              **18**

- **Need to protect public and deter further crimes, § 3553(a)(2)(B)-(C).**

Recidivism of criminal offenders remains a chief concern in perceptions of societal safety. The category classified as career criminals, which includes Defendant, have demonstrated propensity to repeatedly commit criminal acts and pose a significant danger to society. The Sentencing Commission's study on the preventative effect of sentencing on offenders found that longer periods of incarceration lowered the odds of recidivism by twenty-nine percent; specifically, among federal offenders sentenced to more than 120 months. "In conclusion, this study found that offenders confined for longer periods of incarceration had lower odds of recidivism, however, those odds were only substantively lower for offenders sentenced to lengthy incarceration terms." (*See* United States Sentencing Commission - Length of Incarceration and Recidivism, https://www.ussc.gov/research/research-reports/length-incarceration-and-recidivism-2022.(last accessed March 31, 2026) (click on "Full Report", "p. 32").

- **No need to provide treatment, § 3553(a)(2)(D).**

No sentence reduction is necessary based on any claimed need to provide Defendant with medical treatment. While voluminous, Defendant's 70-page Exhibit G, simply reports routine medical conditions, including the negative results of COVID testing at FCI Dublin in 2020 and her mammogram with normal results March of 2023. *Id*. The Bureau of Prisons is providing treatment for Defendant's non-extraordinary routine Care Level 2 medical issues as they may occur. (*See* ECF 60, Ex. G, p.7).

Defendant's Motion fails to assert any extraordinary medical issues requiring extended treatment as a component of a post-incarceration release plan.

- **Sentencing guidelines and unwarranted sentencing disparities, § 3553(a)(3)**

The reduction Defendant seeks, time-served, would ignore the sentencing guidelines and result in a sentence significantly less than the 151-month lower guideline sentence imposed. (*See* PSR ¶ 69). Again, Defendant's primary assertion pertaining to support for a reduction in sentence is predicated not on disparate sentencing but on assignment to a minimal participant role or "lookout." (ECF No. 60 § V, B(1)). By ignoring the guidelines, a reduced sentence would disregard the

need to avoid unwarranted sentence disparities among similarly situated defendants. *See Hughes v. United States*, 138 S. Ct. 1765, 1774 (2018) ("A principal purpose of the Sentencing Guidelines is to promote uniformity in sentencing imposed by different federal courts for similar criminal conduct.") (cleaned up). In sum, Defendant has failed to show that the sentencing factors in § 3553(a) support the reduced sentence she seeks.

**V.     This Court should deny Defendant's request for home confinement.**

If a court grants a sentence reduction, it "may impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). A court imposing a term of supervised release may require a period of "[h]ome detention" as a condition of supervised release if the court finds that home detention is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d).

But here, no sentence reduction is warranted, so this Court need not consider adding any term of supervised release, with or without home detention. *See United States v. Abdulqader*, No. 20-10891, 2021 WL 6102210, at *2 (5th Cir. Dec. 22, 2021); *United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020).

## Conclusion

For all these reasons, the Court should deny Defendant's motion.

Respectfully submitted,

JUSTIN R. SIMMONS
United States Attorney

By: *Jimmie L. Holloway, Jr*
JIMMIE L. HOLLOWAY, JR.
Assistant United States Attorney
State Bar of Texas No.: 24114956
2500 N. Highway 118, Suite A-200
Alpine, TX 79830
432.538.6095 Tel
432.837.7449 Fax
Jimmie.Holloway@usdoj.gov

**U.S. Response to Sentence-Reduction Motion**                    **20**

**Certificate of Service**

I certify that on April 20, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system.

☒ I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant(s):

"Special Mail"
Chanel L. Trim
Reg No. 45142-480
Pro Se Defendant
FPC Bryan
Federal Prison Camp
P.O. Box 2149
Bryan, TX 77805

*Jimmie L. Holloway, Jr*
JIMMIE L. HOLLOWAY, JR.
Assistant United States Attorney